UNITED STATES, Appellee

v.

JOHN E. HUGHES, Basic Airman, U. S. Air Force, Appellant

5 USCMA 374, 17 CMR 374

No. 5076

Decided December 30, 1954

Col A. W. Tolen, USAF, and Maj Norman F. Carroll, USAF, for Appellant.

Lt Col Emanuel Lewis, USAF, Lt Col Harold Anderson, USAF, and Maj Stanley I. Harper, USAF, for Appellee.

## Opinion of the Court

George W. Latimer, Judge:

The accused was convicted by special court-martial for the offense of wrongful possession of marihuana, in violation of Article 134, Uniform Code of Military Justice, 50 USC § 728. He was sentenced to receive a bad-conduct discharge, to forfeit $55.46 per month for six months, and to be confined at hard labor for six months. The convening authority made minor changes in the findings, but otherwise approved them and the sentence. The board of review affirmed. Pursuant to the pro-

375

visions of Article 67(*b*) (2) of the Code, 50 USC § 654, The Judge Advocate General of the Air Force certified the case to this Court, requesting that we answer the following question:

"Was the president of the special court-martial required, sua sponte, to amplify the instructions given with an additional instruction that the offense of 'wrongful possession' of marihuana is not established unless the possession thereof by the accused is shown beyond a reasonable doubt to have been a 'conscious' possession?"

The record shows that on November 1, 1953, the accused was apprehended for another offense. In preparation for his confinement, he was searched by a Sergeant Calder. There is no evidence in the record to justify a finding that accused was suspected of trafficking in habit-forming drugs; but during the course of the search, the sergeant found a small paper packet in the breast pocket of the accused's civilian suit. The custodial chain of the packet was established, and the contents were subsequently analyzed and determined to be marihuana. The accused remained silent, but three airmen who lived in the same barracks testified in his behalf. Their testimony showed that, on some prior occasions, he had loaned the particular suit to another airman who had been seen wearing it in a section of Liverpool which was known as an area where marihuana could be obtained. In addition to that evidence, two prosecution witnesses testified that when the accused was being interrogated about the packet and its contents at the time he was searched, and on the following morning, he stated he did not know what the substance was and that he had never seen the packet before.

At the conclusion of the trial, the president instructed the court on the elements of the offense, as follows:

"That at the time and place alleged, the accused wrongfully had in his possession one ounce, more or less, of a habit forming narcotic drug, as alleged, marihuana; and

"That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces."

The Government contends, and the board of review held, that the word "wrongfully" as used in the instruction can only be interpreted to mean "wrongful conscious possession." On the other hand, appellate defense counsel contend that instructions on possession-offenses of this type must require a finding on an awareness of the presence of the drug, and that the president's failure to include such a basic element in his charge to the court was prejudicial to the accused.

We have previously had occasion to examine, in a different factual setting, the necessary instructions on the offense of wrongful possession of a habit-forming drug. In United States v. Lampkins, 4 USCMA 31, 15 CMR 31, the accused was charged with the wrongful possession of marihuana. There, a cuff link box containing a small portion of that drug was found in an accused's foot locker and some cigarettes containing the same substance were found in the flap of the seat of a chair in his room. The accused testified that he was unaware of the presence of the cigarettes in his room and that he had found the cuff link box in the trash and did not know that it contained marihuana. In his instructions, the law officer included knowledge as an element of the crime, but he also stated that ignorance of fact or circumstances showing carelessness or fault on the part of the accused was not a defense. We discussed the necessity of including knowledge as an element of the offense, and we stated as follows:

"In illegal possession cases two types of knowledge are involved. The distinction between the two was pointed out by the Supreme Court of California in People v. Gory, 28 Cal2d 450, 170 P2d 433. There the court said:

'While it thus appears that "mere possession, except as authorized" is sufficient to constitute the statutory

offense in question, without regard for *scienter* or specific intent to violate the law as would follow from evidence establishing defendant's *knowledge of the contraband character* of the property, the law makes the matter of knowledge in relation to *defendant's awareness of the presence* of the object a basic element of the offense of possession. . . . But knowledge of the *existence* of the object is essential to "physical control thereof with the intent to exercise such control" and such knowledge must necessarily precede the intent to exercise, or the exercise of, such control.'

"After citing several cases, the court continued:

'The distinction which must be drawn, from a reading of the foregoing authorities, is the distinction between (1) *knowledge of the character of the object and the unlawfulness of possession thereof* as embraced within the concept of a specific intent to violate the law, and (2) *knowledge of the presence of the object* as embraced within the concept of "physical control with the intent to exercise such control," which constitutes the "possession" denounced by the statute. It is "knowledge" in the first sense which is mentioned in the authorities as being immaterial but "knowledge" in the second sense is the essence of the offense.' "

In the light of our approval of the foregoing principles in that case, it is apparent that the accused in this instance, in order to be convicted of the alleged offense, must have had an awareness or consciousness of the physical presence of the drug on his person. Certainly, if the court-martial could have found reasonably that a third party wearer placed the packet in the pocket of the suit, unbeknown to the accused, then the latter would not be guilty. The board of review, in its opinion, acknowledged that principle, but went on to rule against the accused because its members concluded that when the president instructed that the possession must be wrongful, he had covered the field of awareness or conscious knowledge. But, that does not follow necessarily. A negligent act may be a wrongful act; and if the court-martial members, in their deliberations, had drifted into that field, they might have returned a finding of guilty based on the accused's failure to know what he should have known. A court is apt to charge an accused with knowledge of what his pockets contain, and, unless the issue is brought into bold relief by a specific instruction, lack of knowledge may be considered as being unimportant. This is particularly true when the the Manual teaches that possession of marihuana is presumed wrongful unless the contrary appears. The nub of the question, as we see it, is that we cannot be sure of the content the court-martial put into the word "wrongful"; and we believe it was error for the president of the court to leave the members unguided by his failure to give a more limiting instruction.

The Government next contends that lack of knowledge is an issue to be raised affirmatively as a defense, and there must be a specific request for an instruction covering that theory before error can be urged on appeal. In United States v. Wallace, 2 USCMA 595, 10 CMR 93, we discussed knowledge as an element of the offense of disobedience of a lawful order of a superior officer. We there held that we would not delve into a refined distinction between an element and an affirmative defense as we were in a borderline category and we would require an instruction in either event. We have a comparable situation here, and we apply that rule; but we must, as we did in that instance, go one step further. We there stated:

"We reiterate again that in this particular crime, it is unimportant whether we designate knowledge an element of the offense or fact to be proven as an affirmative defense because, if in issue, the court must be told to consider it in arriving at a finding. However, because it falls so close to the border we will not reverse for failure on the part of the law officer to include it as an element of

**377**

the offense if it is not reasonably raised as a factual issue. If knowledge is conceded, if the evidence compels a finding that the accused knew the order was given by an officer, or if the record is barren of any evidence from which it could reasonably be inferred the accused might not know that a superior officer was issuing the order, then the error, if any, is non-prejudicial. If, on the other hand, the evidence permits a finding of lack of knowledge, then the accused has just cause to complain."

In line with these principles, the last step we must take is to evaluate the testimony to determine its sufficiency to raise an issue. Here, if knowledge were conceded, or if the evidence compelled a finding that accused was aware of the presence of marihuana, or if the record was barren of testimony to suggest lack of knowledge on his part, then failure to cover that issue in the instructions might be considered nonprejudicial. But there is evidence in this record which reasonably raises an issue of an unawareness on the part of the accused that marihuana was cashed away in his outer breast pocket. If the evidence submitted in his support merely showed that he, on occasions, had loaned his suit to another airman who frequented a district where narcotics were available, we would be inclined to hold that there was no prejudice. However, two prosecution witnesses related pretrial exculpatory statements made by the accused which disclaimed knowledge of the presence of the packet and its contents. Sergeant Calder, who originally searched the accused, stated that when he took the packet from the latter's pocket he asked the accused what it was. The accused replied that he did not know. Another sergeant, to whom the packet had been turned over, stated from the witness stand that on the morning following the apprehension, he called the accused into his office and showed him the packet and the substance it contained. When questioned about it, the accused replied that he did not know what it was and that he had never seen it before he was searched. When the two statements denying knowledge are coupled with the evidence that another had worn the suit and that the drug was found in a little used pocket of accused's civilian garment, we cannot say the testimony is so inherently improbable that an issue of fact is not raised.

We have previously held that exculpatory statements must be considered when determining if there is sufficient evidence to raise an issue. In United States v. Johnson, 3 USCMA 209, 11 CMR 209, we set out the following test:

" . . . Even though we adopt the rule that the exculpatory statements are not binding on the Government and that they may be contradicted, weakened and otherwise attacked, this does not mean that they are not sufficient to frame an issue. For that purpose they should be considered as though the accused had given the statement from the witness stand and, unless their exculpatory statements are inherently improbable and unworthy of belief, they should be accepted by the law officer to frame his issues. Used in this manner the court-martial would be left free to assess their weight and credibility."

While the evidence in this instance is not too impressive when considered in toto, it is sufficient to justify the issue being submitted to the court for determination. Accordingly, the president's failure to include any charge on that subject in his instructions was prejudicial to the accused.

The decision of the board of review is reversed, the sentence is set aside, and the case is remanded to The Judge Advocate General of the Air Force for disposition not inconsistent herewith.

Chief Judge QUINN and Judge BROSMAN concur.