UNITED STATES, Appellee

v

DAVID C. MEADOR, Lance Corporal,
U. S. Marine Corps, Appellant

18 USCMA 91, 39 CMR 91

No. 21,323

January 10, 1969

*Captain John J. Ruprecht,* USMCR, argued the cause for Appellant, Accused. With him on the brief was *Lieutenant J. Arthur Bruno,* JAGC, USNR.

*Captain William S. Foss,* USCMR, argued the cause for Appellee, United States. With him on the brief were *Colonel C. R. Larouche,* USMC, and *Captain John J. Kelly, Jr.,* USMCR.

## Opinion of the Court

FERGUSON, Judge:

Accused was convicted by special court-martial of larceny of an M-14 rifle (Charge I), and violation of a general regulation (Charge II), by having in his wall locker 100 blasting caps. He was sentenced to a bad-conduct discharge, confinement at hard labor for four months, forfeiture of $85.00 per month for a like period, and reduction to the grade of E-1. Intermediate reviewing authorities approved the findings and sentence except for the reduction to E-1, which was disapproved. We granted review to determine:

> Whether the president erred in failing to instruct the court on the issue of accused's awareness or consciousness of the physical presence of the blasting caps in his laundry bag.

Some six hours after the accused was placed in custody as a suspect in the theft of a rifle (the Charge to which he pleaded guilty), he asked a friend to remove a laundry bag from his locker and keep it for him. The locker was not locked and the friend did as directed. Later, he examined the contents of the bag and found a box of blast-caps wrapped in a blue shirt. He reported the matter initially to the Corporal of the Guard and later to the Platoon Commander.

An agent of the Office of Naval Intelligence testified for the defense that when he questioned the accused about the blasting caps, the latter consistently denied any knowledge of them. The accused had previously made an admission to him relative to the theft of the rifle.

Testifying in his own defense, the accused denied ownership of the blue shirt (it bore no markings) and any knowledge of the blasting caps or how these articles came to be found among his personal items in a laundry bag in his locker. He related further that he had lost the key to his locker and that, having had to break the lock to gain entry, the locker could not be properly secured.

In rebuttal, the prosecution presented another Marine who testified that, prior to the day on which the blasting caps were discovered, the accused had asked the witness if he knew where the accused could sell blasting caps. On cross-examination, the witness admitted that he was presently confined in the brig "charged with failing to report a crime that had to do with this rifle which involves MEADOR and some other offenses" and that he was not happy about it.

In his instructions to the court, the president delineated the elements of the offense of violation of a lawful general regulation and the principles of law to be applied by them in determining the question of guilt or innocence. He did not, however, touch upon whether the accused's denial of any knowledge of the presence of the blasting caps in his locker was material to the issue before them.

We think that it was and that the failure of the president to give a proper instruction thereon was prejudicial error.

This case is sufficiently similar to United States v Hughes, 5 USCMA 374, 17 CMR 374, to dictate a similar result. Hughes was convicted for wrongful possession of a paper packet containing marihuana found during the course of a search of his clothing at the time of his incarceration on a wholly unrelated charge. While Hughes did not testify at his trial, two prosecution witnesses testified

92

that when questioned about the marihuana he denied knowing what the substance was and stated that he had never seen the packet before. Several defense witnesses recalled that Hughes had loaned the suit to another airman who had been seen wearing it in a section of Liverpool known as an area where marihuana could be obtained. Based on the rationale of our prior decision in United States v Lampkins, 4 USCMA 31, 15 CMR 31, we held that, in order to be convicted of the charged offense, Hughes must have had an awareness or consciousness of the physical presence of the drug on his person. We went on to state that since a court is apt to charge an accused with knowledge of what his pockets contain, unless the importance of knowledge is brought into bold relief by a specific instruction, we believed it was error to the substantial prejudice of the accused, for the president of the court to leave the members unguided by his failure to give a more limiting instruction.

So, too, in the case at bar. The accused, under oath, denied knowledge of the presence of the ▮ blasting caps found in a laundry bag taken from his locker. A Naval investigator testified to his pretrial denial of such knowledge. The shirt in which the blasting caps were wrapped had no laundry or identifying marks and the accused testified that he had never seen it before. His locker had a broken lock and the inside was accessible to anyone who desired and might have an opportunity to use it. In addition, there was a period of at least six hours between the time of accused's incarceration and the removal of the laundry bag, when the locker was unattended by the accused. Absent a specific instruction relative to this aspect of the accused's defense (see, generally, United States v Simmons, 1 USCMA 691, 5 CMR 119; United States v Curtin, 9 USCMA 427, 26 CMR 207; United States v Baylor, 16 USCMA 502, 37 CMR 122), the court was left unguided as to its importance. United States v Hughes, supra.

The Government at this level con-tends that the accused's story was incredible and unworthy of belief; that a more logical analysis of his testimony compels a finding that not only was he aware of the blasting caps in his laundry bag, but that he was trying to hide them. The issue of lack of knowledge, according to the Government, simply is not raised by the evidence.

We do not agree that the issue was not raised. As we said in United States v Evans, 17 USCMA 238, 242, 38 CMR 36:

"Thus, we have long held the test whether an offense is reasonably raised is whether the record contains some evidence to which the military jury may attach credit if it so desires. United States v Jones, 13 USCMA 635, 33 CMR 167; United States v Remele, 13 USCMA 617, 33 CMR 149; United States v Kuefler, 14 USCMA 136, 33 CMR 348. It matters not that the accused is the sole source of his contention. He certainly 'has the capacity to testify directly to the intent, knowledge, or other *mens rea* which fills out and characterizes his acts either as criminal or legally blameless.' United States v Remele, supra, at page 621."

See also United States v Condron, 17 USCMA 367, 38 CMR 165.

When an affirmative defense is reasonably raised by the evidence, the law officer (president) is ▮ required, *sua sponte*, to instruct thereon. United States v Oisten, 13 USCMA 656, 33 CMR 188, and cases cited at page 662.

Insofar as the reasonable character of his explanation is concerned, this determination is for the members of the court-martial to decide under proper instructions. As stated in Young v United States, 309 F2d 662, 663 (CA DC Cir) (1962):

". . . However implausible, unreliable or incredible only the jury had the right to make the evaluation of . . . [the witness'] testimony. . . . [T]he question of its weight and credibility was for the jury.

. . . Kinard v United States, 68 App DC 250, 96 F2d 522 (1938). See also Stevenson v United States, 162 US 313, 323, 16 S Ct 839, 40 L Ed 980 (1896)."

See also United States v Jones, 13 USCMA 635, 33 CMR 167, at page 640.

We hold, therefore, that the president should have instructed the court that the accused could not be convicted of a violation of Charge II unless it was convinced beyond a reasonable doubt that the accused had knowledge of the presence of the blasting caps in his laundry bag. United States v Hughes, supra. His failure to do so was prejudicial error. United States v Hughes and United States v Oisten, both supra.

The decision of the board of review as to Charge II is reversed. The record of trial is returned to the Judge Advocate General of the Navy. A board of review may reassess the sentence on the basis of the conviction under Charge I, or a rehearing on Charge II may be ordered.

Judge DARDEN concurs.

QUINN, Chief Judge (concurring in the result):

In United States v Kuefler, 14 USCMA 136, 33 CMR 348, I set out at length my views on when, despite absence of a defense request or objection, the law officer is required to instruct the court-martial as to alleged issues of fact. I there noted that findings of fact by the court-martial must be "based upon the probable, not the impossible; upon the reasonable, as it exists in normal, human experience, not upon the unreasonable." *Id.*, at page 141. See Martin v United States, 284 F2d 217 (CA DC Cir) (1960); United States v Backley, 2 USCMA 496, 498, 9 CMR 126. I, therefore, disagree with the implication in the principal opinion that improbable evidence imposes a burden of instruction upon the law officer. However, what appears in this record of trial is merely conflicting evidence as to whether the accused knew of the presence of blasting caps in his locker. The issue was determinable by the court-martial and should, therefore, have been submitted to it by proper instruction. From that standpoint, I join in the disposition reached in the principal opinion.