UNITED STATES, Appellee,

v.

Jerome VERDI, Sergeant, U. S. Air Force, Appellant.

No. 31,836.

ACM S–24215.

U. S. Court of Military Appeals.

Sept. 5, 1978.

Appearances: For Appellant—*Major Bruce R. Houston* (argued); *Colonel Jerry E. Conner* (on brief); *Colonel Robert W. Norris* (on brief).

For Appellee—*Colonel Julius C. Ullerich, Jr.* (argued).

### Opinion of the Court

PERRY, Judge:

The appellant was convicted of two offenses of willfully disobeying the order of a superior commissioned officer and three offenses of failing to obey a lawful general regulation, in violation of Articles 90 and 92, Uniform Code of Military Justice, 10 U.S.C. §§ 890 and 892, respectively. The convening authority disapproved all the findings of guilty except those of two of the Article 92 offenses. The approved sentence includes a bad-conduct discharge, forfeiture of $100 and reduction to the lowest enlisted grade. The United States Air Force Court of Military Review affirmed on December 9, 1975. We granted review to consider the appellant's claims (1) that the wig proscription of paragraph 1–12b(4), Air Force Manual 35–10(C1),[1] September 21, 1973, is unconstitutional; and (2) that the trial judge failed to properly instruct the members of the court concerning the government's burden of proof. We reject the appellant's challenge to the constitutionality of the regulation, for reasons to be stated in part I, *infra*.[2] However, examina-

---

1. Air Force Manual 35–10, 1 December 1972, has been superseded by Air Force Regulation 35–10, 25 February 1975, which permits reserve personnel to wear short hair wigs while performing active duty. However, the charges against Verdi, a reservist, arose prior to the amendment. We therefore resolve the issues presented in this review on the provisions of AFM 35–10.

2. On July 2, 1976, we entered an order holding that *United States v. Young*, 1 M.J. 433 (C.M.A. 1976), decided the same day, was dispositive of the constitutional challenges to the regulation in this case. On August 6, 1976, we vacated

tion of the instructions of the military judge leads us ineluctably to the conclusion that the instructions concerning the government's burden of proof were prejudicially inadequate. Accordingly, we reverse.

## I

We consider first the appellant's challenges to the constitutionality of the regulation. While not questioning the right of the Air Force to prescribe standards for hair length and style, he contends that the wig proscription does not operate to further the Air Force's announced goal of maintaining a high standard of dress and personal appearance by requiring "neatness, cleanliness, safety and military image." Instead, it operates only to insure that the hair grooming standards contained in paragraph 1–12b(2) can be obeyed in only one way and is thus an arbitrary and unreasonable restriction of a private right. He also contends that the regulation constitutes a denial of equal protection because it permits a baldheaded person and persons with physical disfigurements to wear wigs for cosmetic reasons while performing their duties, but deprives others of that right. Finally, he contends that the regulation is unconstitutionally vague, overbroad and indefinite, and that his conviction pursuant to the regulation denied him due process of law.

■ We have quite recently considered identical challenges to a hair length regulation in *United States v. Young*, 1 M.J. 433 (C.M.A.1976). There, the accused was convicted, *inter alia*, of failure to obey an order by his commanding officer to get a hair cut and, in his appeal before this Court, challenged the regulation[3] upon the same grounds. We held that the decision of the United States Supreme Court in *Kelley v. Johnson*, 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976), which upheld a police department's hair length regulation, was

dispositive of the challenges concerning the constitutionality of the Army's hair length regulation. Indeed, the police regulation which was sustained in *Kelley v. Johnson, supra*, was "directed at the style and length of hair, sideburns, and mustaches; beards and goatees were prohibited, except for medical reasons; and wigs conforming to the regulation could be worn for cosmetic reasons." *Id.* at 240, 96 S.Ct. at 1442. The Supreme Court, in upholding the regulation, accorded "wide latitude" to Suffolk County's police department in promulgating its grooming regulations and held that the question was not whether the state can establish a "genuine public need" for the specific regulation but whether the person attacking it can "demonstrate that there is no rational connection between the regulation . . . and the promotion of safety of persons and property." *Id.* at 247, 96 S.Ct. at 1446. The Court found that no such demonstration was made. And in *United States v. Young, supra*, 1 M.J. at 435, we held that "[t]he reasons given by the court" in *Kelley v. Johnson, supra*, "to uphold the police regulations are equally applicable to the [military] service regulations on the subject." The appellant correctly reminds us that *Young* upheld the Army's hair length regulation (AR 600–20) but that it did not address the wig proscription provision since *Young's* violation did not involve a wig. However, the rationale of *Kelley v. Johnson, supra*, applies equally to this case and leads us to the same conclusion. Accordingly, we decline to hold that the wig proscription in AFM 35–10[4] offends the Constitution in any manner suggested by the appellant.

## II

A canvas of pertinent legal principles will facilitate our review of the appellant's challenge to the adequacy of the military judge's instructions to the court panel.

---

that order pursuant to the appellant's petition for reconsideration which called our attention to the pendency of the yet unresolved issue of the adequacy of the instructions given by the military judge.

**3.** AR 600–20, para. 5–39.

**4.** The wig prohibition provision of the police regulation sustained in *Kelley v. Johnson*, 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976), was set forth in language identical to that in AFM 35–10.

■ In the trial of criminal cases the trial judge must instruct the jury on every issue or theory having any support in the evidence.[5] "[T]he instructions should distinctly set forth the law applicable, [both] to the case as made by the evidence for the prosecution . . . [and] as made by all the evidence, and especially to any favorable evidence comprising defensive matter in behalf of the accused."[6] We have held that the trial judge's obligation to instruct upon issues arises not from the request of the parties but from the existence of evidence raising the issue. *United States v. Graves*, 1 M.J. 50 (C.M.A.1975). There (*supra* at 53) we observed:

> The trial judge is more than a mere referee, and as such he is required to assure that the accused receives a fair trial. Advocacy leaves the proceedings at the juncture of instructing the court members. Irrespective of the desires of counsel, the military judge must bear the primary responsibility for assuring that the jury is instructed on the elements of the offenses raised by the evidence as well as potential defenses and other questions of law.

■ When "the law governing a case is expressed in a statute," the presiding judge, in his charge to the jury, "should use the language of the statute and," indeed, may commit "error if [he] employs language which constitutes a [pertinent] departure . . . from the statute."[7] This does not mean that the judge must in every instance read the statute verbatim while instructing the jury. Indeed, it has been held in another context that the judge may state to the jury the statutory law upon which an action is based.[8] Where he chooses to merely summarize the provisions of a statute the judge must take care to include each element of the offense as set forth in the statute as well as all variations and exceptions that are set forth therein. It necessarily follows that when the law governing a case is set forth in a punitive regulation, enforceable pursuant to Article 92, UCMJ,[9] the language of the regulation must be included in the instructions. Otherwise, the danger is great that the jury will misinterpret the applicable law. While the judge is not required to read verbatim the language of statutes and punitive regulations, it is clear from the foregoing that any summarization must include all pertinent provisions thereof. Obviously, if the judge reads verbatim the language of applicable statutes and regulations, this would remove the danger of omitting crucial provisions.

■ Just as the trial judge must fully and completely instruct the jury concerning all theories having support in the evidence, he must additionally instruct the jury that the accused is presumed[10] to be innocent until the prosecution proves his guilt beyond a reasonable doubt.[11] The judge must

---

5. *Stevenson v. United States*, 162 U.S. 313, 16 S.Ct. 839, 40 L.Ed. 980 (1896); *United States v. Hammons*, 566 F.2d 1301 (5th Cir. 1978); *United States v. Nevitt*, 563 F.2d 406 (9th Cir. 1977); *United States v. Swallow*, 511 F.2d 514 (10th Cir. 1975). *See United States v. Buchana*, 19 U.S.C.M.A. 394, 41 C.M.R. 394 (1970); *United States v. Adams*, 18 U.S.C.M.A. 439, 40 C.M.R. 151 (1969). *See also* Manual for Courts-Martial, United States 1969 (Revised edition), para. 73*a*.

6. 75 Am.Jur.2d, *Trial* § 604. *See United States v. Meador*, 18 U.S.C.M.A. 91, 39 C.M.R. 91 (1969); *United States v. Oisten*, 13 U.S.C.M.A. 656, 33 C.M.R. 188 (1963); *United States v. Smith*, 13 U.S.C.M.A. 471, 33 C.M.R. 3 (1963); *Bird v. United States*, 180 U.S. 356, 21 S.Ct. 403, 45 L.Ed. 570 (1901); *State v. Budge*, 126 Me. 223, 137 A. 244, 53 A.L.R. 241 (1927); *State v. Baird*, 288 Mo. 62, 231 S.W. 625, 15 A.L.R. 1035 (1921); *Manual, supra*, para. 73*a*.

7. 75 Am.Jur.2d, *Trial* § 609. *See State v. Rutten*, 73 Idaho 25, 245 P.2d 778 (1952); *Hiller v. State*, 116 Neb. 582, 218 N.W. 386, 58 A.L.R. 1322 (1928); *Life Insurance Co. of Virginia v. Hairston*, 108 Va. 832, 62 S.E. 1057 (1908); *St. Louis v. Slupsky*, 254 Mo. 309, 162 S.W. 155 (1913); *McClellan v. Thorne*, 109 Okl. 258, 235 P. 528 (1925).

8. *Terminal Association v. Fitzjohn*, 165 F.2d 473, 480, 1 A.L.R.2d 290 (8th Cir. 1948).

9. 10 U.S.C. § 892.

10. *Taylor v. Kentucky*, 436 U.S. 478, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978).

11. Article 51(c), Uniform Code of Military Justice, 10 U.S.C. 851(c).

also instruct that the burden is upon the prosecution to prove beyond a reasonable doubt all the essential elements of the offense of which the accused is charged and that if the proof fails to establish any of these essential elements the accused is entitled to an acquittal.[12] The jury must also be instructed that the burden of proof never shifts to the accused to establish his innocence or to disprove the facts necessary to establish the crime charged.[13]

■ When evidence is adduced during the trial which reasonably raises an affirmative defense, the judge "must" instruct the court panel "that they may not find the accused guilty of the offense . . . unless they are convinced beyond a reasonable doubt that the basis of the special defense does not exist . . . ."[14]

■ The jury must be instructed that where an exception is contained within the criminal statute or regulation, the burden of proof is upon the prosecution also to prove that the accused does not fall within the exceptions contained in the statute.[15] Where the affirmative defense which might be interposed on behalf of the accused does not appear within the statute (or regulation) which defines the criminal act, the prosecution does not have the initial burden to negative those affirmative defenses.[16]

### III

■ The appellant was convicted of wearing a wig while on duty, in violation of AFM 35–10, which provides as follows:

Wigs or hairpieces will not be worn while on duty or in uniform except for cosmetic reasons to cover natural baldness or physical disfiguration. If under these conditions a wig or hairpiece is worn, it will conform to Air Force standards. (AFM 35–10(C1), paragraph 1–12b(4), 21 September 1973).

A reading of this provision at once discloses that the wearing of wigs and hairpieces is not prohibited under all circumstances. On its face, the regulation provides an exception to the prohibition and its meaning is plain, even if we do not apply the general rule, which is that penal statutes are to be construed strictly against the Government. *Barrett v. United States,* 423 U.S. 212, 218, 96 S.Ct. 498, 46 L.Ed.2d 450 (1976); *United States v. Giles,* 300 U.S. 41, 57 S.Ct. 340, 81 L.Ed. 493 (1937); *United States v. Resnick,* 299 U.S. 207, 57 S.Ct. 126, 81 L.Ed. 127 (1936); *Prussian v. United States,* 282 U.S. 675, 51 S.Ct. 223, 75 L.Ed. 610 (1931); *see United States v. Truelove,* 527 F.2d 980, 983 (4th Cir. 1975). Moreover, it is generally "held that the exception of a particular thing from the operation of the [prohibitory] words of a statute" constitutes a clear indication "that, in the opinion of the lawmaker, the thing excepted would be within the general [prohibition] had not the exception been made. *Crawford v. Burke,* 195 U.S. 176 [25 S.Ct. 9, 49 L.Ed. 147] (1904); *Brown v. Maryland,* 12 Wheat. (U.S.) 419 [6 L.Ed. 678] (1827); *State v. Hill,* 189 Kan. 403, 369 P.2d 365, 91 A.L.R.2d 750 [1962]."

---

**12.** *Id.; In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *Christoffel v. United States,* 338 U.S. 84, 69 S.Ct. 1447, 93 L.Ed. 1826 (1949); *Agnew v. United States,* 165 U.S. 36, 17 S.Ct. 235, 41 L.Ed. 624 (1897); *Davis v. United States,* 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499 (1895); *Gorin v. United States,* 313 F.2d 641 (1st Cir. 1963), *cert. denied,* 374 U.S. 829, 83 S.Ct. 1870, 10 L.Ed.2d 1052; *Colt v. United States,* 158 F.2d 641 (5th Cir. 1946).

**13.** *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977); *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *Davis v. United States, supra.*

**14.** Paragraph 214, Manual, *supra; Mullaney v. Wilbur, supra; United States v. Meador, supra.*

**15.** *United States v. Vuitch,* 402 U.S. 62, 70, 91 S.Ct. 1294, 28 L.Ed.2d 601 (1971). *See Patterson v. New York, supra; cf. Mullaney v. Wilbur, supra.*

**16.** *See* para. 214, Manual, *supra,* which provides, *inter alia,* "[t]hat the burden of proof to establish the guilt of the accused beyond a reasonable doubt is upon the Government, both with respect to those elements of the offense which must be established in every case and with respect to issues involving special defenses which are raised by the evidence."

73 Am.Jur.2d *Statutes,* § 316. Therefore, an offense cognizable under Article 92, UCMJ, exists only where a wig or hairpiece is not worn "for cosmetic reasons to cover natural baldness or physical disfiguration."

■ To constitute an offense cognizable under the regulation all facts contemplated by its language must be established. It is thus clear that to convict the appellant of violating the regulation the Government was required to prove that on the dates of the alleged offenses the following facts existed:

(1) paragraph 1–12b(4), AFM 35–10, was a lawful general regulation; [17] and

(2) Air Force standards were set forth in paragraph 1–12b(2) of AFM 35–10; [18] and

(3) that the appellant wore a wig or hairpiece; and

(4) that when the appellant wore a wig or hairpiece he was (a) on duty or (b) in uniform; and either

(5) that the appellant was not naturally bald; or

(6) was not physically disfigured; or

(7) that if the accused was bald or physically disfigured, he nevertheless did not wear the wig for cosmetic reasons; or

(8) that in the event the appellant was either bald or physically disfigured and wore the wig for cosmetic reasons, the wig worn by him did not conform to the Air Force standards set forth in the regulation.

It is equally clear that failure of the prosecution to prove the facts necessary to make out the offense of failure to obey the prohibition in AFM 35–10 would require an acquittal. For it is axiomatic that to over-come the presumption of innocence, "that bedrock 'axiomatic and elementary' principle whose 'enforcement lies at the foundation of the administration of our criminal law,'" (397 U.S. at 363, 90 S.Ct. at 1072), due process requires that the Government go forward with "proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." [19] *Id.* at 364, 90 S.Ct. at 1073.

Our dissenting colleague reminds us that previous decisions of this Court dictate different conclusions concerning the burden of proof which we announce herein. Thus, in *United States v. Gohagen,* 2 U.S.C.M.A. 175, 7 C.M.R. 51 (1953), this Court held that the Government was not required to establish that the accused did not fall within the exceptions of an order which prohibited possession of instruments such as syringes and hypodermic needles "except for household use or the treatment of disease." The dissent, therefore, suggests that *Gohagen* dictates the conclusion that the burden was on this appellant to prove the existence of circumstances which would have brought him within the exceptions to AFM 35–10 and that the judge in this case would not have been required to instruct as to any instance when a wig might be worn without violating the regulation. Moreover, the dissent states that it is uncontroverted that Verdi wore the wig to cover his naturally longer hair. But *United States v. Gohagen, supra,* and other decisions [20] of this Court which embrace its concept must yield to pronouncements by the United States Supreme Court, which we acknowledge as the ultimate authority concerning the meaning of the Constitution. Thus, in *In re Winship,* 397 U.S. 258, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), the Court held that as a matter of

---

17. *United States v. Williams,* 3 M.J. 155 (C.M.A.1977).

18. *Id.*

19. *In re Winship, supra. See Patterson v. New York, supra; Cool v. United States,* 409 U.S. 100, 93 S.Ct. 354, 34 L.Ed.2d 335 (1972); *Ivan v. New York,* 407 U.S. 203, 92 S.Ct. 1951, 32 L.Ed.2d 659 (1972); *Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972); *Moris-*

sette *v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952); *Bailey v. Alabama,* 219 U.S. 219, 31 S.Ct. 145, 55 L.Ed. 191 (1911); *Coffin v. United States,* 156 U.S. 432, 15 S.Ct. 394, 39 L.Ed. 481 (1895); *Davis v. United States, supra.*

20. *United States v. Jenkins,* 22 U.S.C.M.A. 365, 47 C.M.R. 120 (1973); *United States v. Tee,* 20 U.S.C.M.A. 406, 43 C.M.R. 246 (1971).

due process the prosecution bears the burden of proving beyond a reasonable doubt "the existence of every fact necessary to constitute the crime charged." *Davis v. United States,* 160 U.S. 469, 498, 16 S.Ct. 353, 360, 40 L.Ed. 499 (1895); quoted in *Winship,* 397 U.S. at 363, 90 S.Ct. 1068. There can be no doubt that AFM 35–10 recognizes circumstances when wigs and hairpieces may be worn. Only where those circumstances do not exist can one be held accountable for violating the regulation. Therefore, the Government must prove that the accused did not qualify for the exemption in order to convict him of violating the regulation.

While previous opinions of the Supreme Court recognized the long-standing assumption that proof beyond a reasonable doubt is constitutionally required. for a conviction, *Winship* stated the prosecutor's burden more graphically as including proof of "the existence of every fact necessary to constitute the crime charged" and announced that as a matter of due process, the accused is constitutionally protected from conviction without such proof. Said the Court:

> Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.

397 U.S. at 364, 90 S.Ct. at 1073.

In subsequent decisions, the Court has left no doubt concerning the extent of the government's burden of proof. In *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), the Court held that a Maine murder statute, which required the accused to prove that he acted "in the heat of passion, on sudden provocation" in order to reduce the homicide to manslaughter, violated the *Winship* principle, and "that the Due Process Clause requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue is properly presented in a homicide case." *Id.* at 704, 95 S.Ct. at 1892. Later, in *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), the Court sustained New York's right to place upon the accused the burden, in a homicide case, of proving the affirmative defense that he "acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse." N.Y. Penal Law § 125.25 (McKinney), cited: 432 U.S. at 198 n. 2, 97 S.Ct. 2319, 2321 n. 2. The Court declined to adopt as a "constitutional imperative" that a state must disprove beyond a reasonable doubt every fact constituting any and all *affirmative defenses* related to the "culpability" of the accused. While *Patterson* may appear to lessen the prosecution's burden of proof as defined in *Winship* and *Mullaney, see* 432 U.S. at 216, 97 S.Ct. 2319. (Powell, J., dissenting), the Court reaffirmed the prosecution's burden of proof as delineated in *Winship* and *Mullaney.*[21] Said the Court:

> *Mullaney* surely held that a State must prove every ingredient of an offense beyond a reasonable doubt, and that it may not shift the burden of proof to the defendant by presuming that ingredient upon proof of the other elements of the offense. This is true even though the State's practice, as in Maine, had been traditionally to the contrary. Such shifting of the burden of persuasion with respect to a fact which the State deems so important that it must be either proved or presumed is impermissible under the

21. The difference between the language of the New York statute in *Patterson* ("except that in any prosecution under this subdivision, it is an affirmative defense . . . ") and the language of para. 1–12b(4), AFM 35–10, *supra,* ("except for cosmetic reasons to cover natural baldness or physical disfiguration") is sufficient even to preclude application of the burden of production to the accused. *See Mulla-*ney v. Wilbur, supra, 421 U.S. at 695 n. 20 and 701 n. 28, 95 S.Ct. 1881. *Cf. United States v. Hooker,* 541 F.2d 300, 305 (1st Cir. 1976); *United States v. Black,* 512 F.2d 864, 867–72 (9th Cir. 1975); *United States v. Benish,* 389 F.Supp. 557, 559–60 (D.C.Pa.1975), *aff'd* 523 F.2d 1051 (3d Cir. 1975), *cert. denied* 424 U.S. 954, 96 S.Ct. 1428, 47 L.Ed.2d 359 (1976).

Due Process Clause. 432 U.S. at 215, 97 S.Ct. at 2330.

That this Court, in *United States v. Gohagen, supra,* placed reliance upon *Morrison v. California,* 291 U.S. 82, 54 S.Ct. 281, 78 L.Ed. 664 (1934), for its conclusion does not, in our view, suggest a different conclusion.[22] Not only is *Morrison* distinguishable on its facts; but that case actually supports our conclusion here because it held that "the conviction of Morrison because he failed to assume the burden of disproving a conspiracy was a denial of due process that vitiates the judgment as to him." *Id.* at 93, 54 S.Ct. at 286.[23] It was thus incumbent upon the military judge to instruct the court panel concerning the government's burden of proof, and, that if they should find that any of the facts necessary to make out an offense under the regulation had not been established beyond a reasonable doubt, it was their duty to acquit the accused.

## IV

With the above principles in mind, we proceed to consider the evidence adduced by the parties and the instructions given by the military judge to the panel members. The Government presented evidence that the appellant wore a wig or hairpiece on the dates alleged in the specifications and that,

prior to the preferral of charges, he wrote his commander explaining that he wore the wig to create a facade of short hair while maintaining his naturally longer hair which he preferred during nonduty hours. The appellant presented as his only witness a Dr. Lockman, who testified that he had examined a scar on the appellant's scalp the day of the trial and that in his opinion the scar constituted a "physical disfigurement." He further stated that, though the test for determining whether the scar constituted disfigurement was necessarily a subjective one, "I think that if I saw that and Sergeant Verdi was a patient of mine, there would not be the slightest hesitation and I would say that was a physical disfigurement." Based upon the testimony of Dr. Lockman, the appellant's attorney requested the military judge to instruct the jury that the Government had the burden of proving that the appellant did not come within the exception to the prohibition against the wearing of wigs. Without otherwise ruling upon the request, the judge stated that he would instruct the jury that the prosecution had the burden of proving all the elements of the offense. He then instructed the panel concerning the facts the Government was required to prove, as follows:

In Specification 1 of Charge II, the accused is charged with the offense of fail-

---

**22.** *See* 432 U.S. at 203 n. 9, 97 S.Ct. 2319.

**23.** *See also United States v. Vuitch, supra,* 402 U.S. at 69–70, 91 S.Ct. at 1298, where the Court reversed the conviction of a physician under a statute which prohibited abortions unless "done as necessary for the preservation of the mother's life or health" under the direction of a licensed physician. The Court stated: "In concluding that the statute places the burden of persuasion on the defendant once the fact of an abortion has been proved, the [District] court relied on *Williams v. United States,* 78 U.S. App.D.C. 147, 138 F.2d 81 (1943). There the Court of Appeals for the District of Columbia Circuit held that the prosecution was not required to prove as a part of its case in chief that the operation was not necessary to preserve life or health. *Id.,* at 147, 149, 138 F.2d, at 81, 83. The court indicated that once the prosecution established that an abortion had been performed the defendant was required to

come forward with evidence which with or without other evidence is sufficient to create a reasonable doubt of guilt. *Id.* at 150, 138 F.2d, at 84. The District Court here appears to have read *Williams* as holding that once an abortion is proved, the burden of persuading the jury that it was legal (*i. e.,* necessary to the preservation of the mother's life or health) is cast upon the physician. Whether or not this is a correct reading of *Williams,* we believe it is an erroneous interpretation of the statute. Certainly a statute that outlawed only a limited category of abortions but 'presumed' guilt whenever the mere fact of abortion was established would at the very least present serious constitutional problems under this Court's previous decisions interpreting the Fifth Amendment. *Tot v. United States,* 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943); *Leary v. United States,* 395 U.S. 6, 36, 89 S.Ct. 1532, 1548, 23 L.Ed.2d 57, 81 (1969)."

ure to obey a lawful general regulation in violation of Article 92 of the Uniform Code of Military Justice. Under that charge there are three specifications and the elements of the offense are the same with respect to each of the offenses alleged under that charge.

The elements of those offenses are:

That there was in effect a certain lawful general regulation in the following terms: that is paragraph 1–12b(4), Air Force Manual 35–10, dated 21 September 1973, which prohibited and (sic) unlawful wearing of a wig;

Secondly, that the accused had a duty to obey that regulation; and finally

That at the time and place alleged, the accused violated that regulation by, in the first instance, Specification 1, on or about 8 October 1974, violated the lawful general regulation by wrongfully and unlawfully wearing a wig:

In the case of the second Specification, on 15 October 1974, by wrongfully and unlawfully wearing a wig; and

In Specification 3, on 17 October 1974, by wrongfully and unlawfully wearing a wig.

The place in each instance is alleged as Lackland Air Force Base, Texas.

The judge also instructed the panel that he had determined as a matter of law that AFM 35–10 was a lawful general regulation. He further instructed them concerning the presumption of innocence and of reasonable doubt by fully explaining the meaning of those principles.

■ The military judge never read or quoted the language of the wig regulation in its entirety [24] or Air Force standards.[25] But, he did instruct, with respect to both specifications, that the Government had the burden of proving that the appellant violated the regulation by "wrongfully and unlawfully wearing a wig," and that to convict, the panel must be "satisfied beyond a reasonable doubt of the accused's guilt from all the evidence in the case." But he failed to instruct the panel that the Government was required to prove, by competent evidence, each provision of the regulation, including the absence of those circumstances which otherwise would have brought the appellant under the exceptions to the wig prohibition.

■ The Government argues that entitlement to the requested instructions would follow only if the appellant had given more testimony that he wore the wig for cosmetic reasons to cover physical disfigurement or baldness and that, in their view, it is clear that the appellant was not wearing the wig for cosmetic reasons since he had previously written a statement to the effect that he wore the wig for other reasons. But this argument overlooks the duty of the trial judge to instruct concerning the government's burden of proving that the accused's conduct comes within the prohibitions of a statute containing criminal sanctions. The holding of the Supreme Court in *In re Winship, supra,* 397 U.S. at 364, 90 S.Ct. at 1073, that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged," clearly recognized the government's burden to

---

24. The military judge did place AFM 35–10 as a government exhibit before the court. This did not, however, relieve the judge of the duty to personally instruct the panel in the language of the regulation. Nor did the reading of the regulation by both counsel do so. *Taylor v. Kentucky, supra,* at 1936–37.

25. The standards referred to in AFM 35–10(C1), para. 1–12b(4), are contained in Table 1–1 of the Manual (which is contained in the attached appendix).

prove all facts necessary to constitute the offense. That the appellant wrote a statement in which he assigned other reasons for wearing the wig did not relieve the Government of its burden of proof. The Government further argues that testimony by Dr. Lockman that a scar on the appellant's head constituted disfigurement, absent further testimony that the wig was worn for cosmetic reasons, did not constitute evidence which brings the appellant within the exception of the regulation. But this argument ignores the plain language of AFM 35–10. The prohibition against wearing wigs and hairpieces becomes operative only where the excepted circumstances do not exist. Thus, the Government is required to prove the absence of those circumstances that otherwise would render the wearing of the wig permissible. Moreover, we can perceive no other reason for Dr. Lockman's testimony than to inform the panel that the accused had a scar on his head that constituted "physical disfiguration." This is all the more evident from the fact that the appellant's counsel vigorously argued to the court panel that the appellant had a "disfigurement" which entitled him to wear the wig. The fact that the appellant wrote a statement in which he assigned other reasons for wearing the wig only constituted an item of evidence which the court panel could consider in deciding the question of the appellant's guilt or innocence. But it did not diminish the government's burden to disprove application of the exception. Failure to instruct concerning the specific circumstances under which a wig may be worn and the requirement that the Government prove the nonexistence of those circumstances may have left the panel members with the impression that to invoke criminal sanctions the government's sole burden was to prove that the appellant wore a wig on the dates alleged in the specifications. Failure to instruct concerning the Air Force standards (*see* footnote 25) left the panel members unable to judge whether the wig which the appellant wore conformed to those standards.

█ Under these circumstances, we hold that the panel members were not properly instructed by the judge concerning the government's burden of proof and that he should have instructed the panel in accordance with the request made by appellant. Prejudice is apparent.

The decision of the United States Air Force Court of Military Review is reversed. The findings and sentence are set aside. The record of trial is returned to the Judge Advocate General of the Air Force. A rehearing may be ordered.

Chief Judge FLETCHER concurs.

**★TABLE 1—1**

**MALE PERSONAL GROOMING STANDARDS**

| LINE | A Member's | B must | C must not | D Reason |
|---|---|---|---|---|
| 1 | hair | be clean | | Clean hair is required for health reasons. |
| 2 | | | be worn in any of the following styles: braids, ducktail, pageboy, flip, mohawk, or bulky hair styles (notes 1, 2, and 3). | These styles are not compatible with an acceptable military image. |
| 3 | | | touch his ears when groomed and only the closely cut or shaved hair on the back of the neck may touch the collar. | Military image requires hair to be trimmed. Ears and collar are easily observable and definable limits. |
| 4 | | present a tapered appearance (note 1) on sides and back both with - and without headgear (note 2). | | Tapered appearance contributes to the neat, well-groomed look necessary for the military image. |
| 5 | | | exceed 1 and ¼ inches *in bulk* regardless of length (note 3). | Excessive bulk interferes with proper wear of headgear (mandatory uniform items) and detracts from military image. Safety considerations in some AFSCs. |
| 6 | | be well-groomed, that is, arranged in an orderly manner. | | Required for neatness. |
| 7 | | | touch the eyebrows, when groomed, or protrude in front below the band of properly worn headgear. | Required for neatness and safety. |
| 8 | | look natural if artificially colored; | be dyed an abnormal hair color. | Acceptable military image requires natural appearance. |
| 9 | | | contain or have any visible foreign items attached to it. | Hair ornaments and visible grooming aids detract from acceptable military image and in some cases present a safety hazard. |
| 10 | sideburns (if worn) | be neatly trimmed and tapered in same manner as the haircut. | | Sideburns are an extension of the haircut, therefore, the same rules apply. |
| 11 | | be straight and of even width (not flared) and end in a clean-shaven horizontal line. | | This presents a neat, uniform appearance compatible with the military image. |
| 12 | | . | extend below the lowest part of the exterior ear opening. | This is an easily observable and definable limit which creates an appearance which complements the required appearance of the hair. |

| | A | B | C | D |
|---|---|---|---|---|
| **TABLE 1-1 (Continued)** | | | | |
| **MALE PERSONAL GROOMING STANDARDS** | | | | |
| LINE | Member's | must | must not | Reason |
| 13 | mustache (if worn) | | extend downward beyond the lipline of the upper lip and may not extend sideways beyond a vertical line drawn upward from the corner of the mouth. | Acceptable military image requires that some limitation of mustaches be established. These limits are considered both reasonable and easily definable. They represent a rational compromise between the extremes of absolute prohibition and unlimited growth. |

NOTES: 1. Tapered appearance — when viewed from any angle, the outline of an individual's hair, on the sides and back, will conform generally to the shape of the skull, curving inward to the termination point. This does not mean that each hair must diminish gradually in length from the top of the skull to the termination point, although this is necessary to some degree to effect the tapered appearance. The so called "block cut" in the back is permitted so long as a tapered appearance is maintained.

2. Properly fitted headgear must "grip" the hair to remain in place. Therefore, a minimal break in the tapered line is acceptable along the sides and back of the hat band.

3. Bulk — the thickness or depth of the mass of a member's hair. The distance that the mass of the hair protrudes from the scalp, when groomed (as opposed to the length of the hair). This provision eliminates the need for individuals to wear outsize headgear in order to conform to the standard.

---

COOK, Judge (concurring in part and dissenting in part):

I agree with the majority that the hairstyle regulation is constitutionally valid. I disagree, however, with the conclusion that the trial judge's instructions were fatally flawed.

A number of statements in the principal opinion appear to be incompatible with previous decisions of this Court. For example, it is stated, in effect, that all the provisions of the regulation should be instructed upon by the judge, otherwise "the danger is great that the jury will misinterpret the applicable law."

In *United States v. Boone*, 1 U.S.C.M.A. 381, 3 C.M.R. 115 (1952), the Court held that it was error for a judge to instruct on the several ways, specified by statute, in which desertion can be committed when the specification alleges only one of them. It suffices, however, to focus on the primary basis of my disagreement.

In *United Staes v. Gohagen*, 2 U.S.C.M.A. 175, 7 C.M.R. 51 (1953), the accused was charged with possessing, contrary to a general order, instruments, such as syringes and hypodermic needles, that could be used to administer narcotics. The order prohib-

ited possession of such instruments, "except for household use or the treatment of disease." The Court considered two questions. The first was whether the specification had to allege that the instruments possessed by the accused had not been possessed for any of the excepted uses; the Court answered that it did not. The second question was whether the Government had "to *establish by proof* that the accused was not to be found within the exceptions." *Id.* at 176, 7 C.M.R. at 52. The Court also answered this question in the negative, quoting the following from *Morrison v. California*, 291 U.S. 82, 88–91, 54 S.Ct. 281, 284–85, 78 L.Ed. 664 (1934):

The decisions are manifold that within limits of reason and fairness the burden of proof may be lifted from the state in criminal prosecutions and cast on a defendant. The limits are in substance these, that the state shall have proved enough to make it just for the defendant to be required to repel what has been proved with excuse or explanation, or at least that upon a balancing of convenience or of the opportunities for knowledge the shifting of the burden will be found to be an aid to the accuser without

subjecting the accused to hardship or oppression. . . .

For a transfer of the burden, experience must teach that the evidence held to be inculpatory has at least a sinister significance . . . or if this at times be lacking, there must be in any event a manifest disparity in convenience of proof and opportunity for knowledge, as, for instance, where a general prohibition is applicable to every one who is unable to bring himself within the range of an exception. . . . The list is not exhaustive. Other instances may have arisen or may develop in the future where the balance of convenience can be redressed without oppression to the defendant through the same procedural expedient. The decisive considerations are too variable, too much distinctions of degree, too dependent in last analysis upon a common sense estimate of fairness or of facilities of proof, to be crowded into a formula. One can do no more than adumbrate them; sharper definition must await the specific case as it arises.

Applying *Morrison* to the facts of *Gohagen*, this Court said:

Having established possession by accused of a hypodermic syringe and needle, the prosecution had established a prima facie case. See Manual for Courts-Martial, United States, 1951, paragraph 213a; 21 USC § 188m. The possession thus shown was in its very essence, of sinister significance—and it was surely within the power of accused to prove with ease that his possession fell within an exception to the circular, if such was the case. He made no attempt whatever to do so. It is in no sense unfair or unjust to hold him accountable in the absence of his failure to explain. *Williams v. United States,* . . . [78 U.S.App.D.C. 147, 138 F.2d 81 (1943)]. [2 U.S.C.M.A. at 177, 7 C.M.R. at 53.]

Here the regulation provides, in pertinent part: "Wigs or hair pieces will not be worn while on duty or in uniform except for cosmetic reasons to cover natural baldness or physical disfiguration." AFM 35-10(C1), paragraph 1-12b(4), September 21, 1973. Undisputed evidence established that, while on duty, the accused wore a wig on the occasions set out in the specifications. If nothing else appeared in the record, under *Gohagen*, the judge would not have been required to instruct as to any instance when a wig might be worn without violating the regulation. There was, however, some evidence relevant to an exception, and the question, therefore, is whether that evidence was sufficient to require a specific instruction as to it.

Testifying as a defense witness, a dermatologist stated he had examined the accused's head and had found, near the part line on the left side, a scar about two centimeters (slightly more than ¾ of an inch) in length and a ½ to ¾ of a centimeter (⅕ to slightly more than a ¼ of an inch) in width. In the doctor's opinion, the scar was a "physical disfigurement." Not an iota of evidence, however, suggests that the accused wore a wig "for cosmetic reasons to cover" the scar, as required for the exception to be operative. The only evidence of the relationship between the scar and the accused's wearing of a wig impels the conclusion that he wore a wig to conceal hair length that would otherwise be contrary to the style regulation. Thus, a witness, who testified he was a "close friend" of the accused and that he had seen him without the wig, stated that accused's natural hair was "slightly longer than . . . that of his hair piece"; and, in a pretrial statement by the accused that was properly admitted into evidence, the accused said:

I wear a wig. The reason for this is I prefer to have my hair a little longer when I am out of uniform.

In his post-trial review to the convening authority, the staff judge advocate extensively discussed the law as to the necessity of instructions to be responsive to the issues in the case. He observed that the "time-honored" principle is that the instructions must be " 'tailored' to the evidence present in the case." He concluded, and I agree, that the evidence was "insufficient . . to raise a requirement for an instruction" as to the right to wear a wig "for cosmetic reasons to cover . . . physical disfigu-

ration." As I agree with his view of the law and his application of it to the facts of this case, I have extracted the following comments from his review:

In this case, the . . . [regulation] is clearly not within the class of cases requiring the government to negative the exception by proof. As recently as *United States v. Jenkins,* 22 USCMA 365, 47 CMR 120 (1973), the court considered a provision of AFM 35–10, paragraph 1–12(5), prohibiting beards and goatees, "except that a medical officer may grant a waiver of the wear of a beard for medical reasons." In this class of cases, the court stated, the accused has the burden of bringing himself within the exception to the regulation, as reiterated in *United States v. Mallow,* 7 USCMA 116, 125, 21 CMR 242 (1956):

"[T]he legal burden placed on the accused is no more than to produce some evidence, regardless of its source, to raise reasonably an issue that he is within the excepted class. If he goes that far, he may raise reasonable doubt about his guilt, and in the final analysis, the burden does not shift from the Government to establish the offense beyond a reasonable doubt."

From *Mallow* and related cases, it is clear that it is incumbent upon the accused to set up "this affirmative defense of coming within the exception," so as to require an instruction. *United States v. Fraser,* 17 CMR 790, 794 (AFBR 1954).

Thus, the requirement to raise reasonably the affirmative defense, that is, to meet the *requirements* of the defense, is all the more significant, when a regulation contains an overall prohibition, with limited exceptions. It is incumbent upon the defense in these cases to show that it falls *within the exception. Jenkins, supra; Mallow, supra; Fraser, supra; United States v. Blau,* 5 USCMA 232, 17 CMR 232 (1954); *United States v. Thompson,* 3 USCMA 620, 14 CMR 38 (1954); *United States v. Gohagen,* 2 USCMA 175, 7 CMR 51 (1953); *United States v. Durham,* 6 CMR 320 (ABR 1952); *United States v. Winters,* 2 CMR 728 (AFBR 1951); *cf. United States v. Landrum,* 4 USCMA 707,

16 CMR 281 (1954) (instruction improperly denied on essential element of regulation, which prosecution was required to prove); *United States v. Tucker,* 17 USCMA 551, 38 CMR 349 (1968) (accused's *contradicted* testimony was sufficient to raise an instructional issue—credibility is not the test).

.   .   .   .   .

The defense asserted continuously the exception was a physical disfiguration, when in fact, the essential element of the defense is *"cosmetic reasons* to cover . . . physical disfiguration." There was no evidence indicating . . . that the accused was entitled to wear the wig at the times in question for cosmetic reasons to cover the scar . . . ."

.   .   .   .   .

The accused, required under *Mallow* to move forward with a defense, did not meet his burden of reasonably raising an issue. (Compare the evidence in *Jenkins, supra,* where accused raised reasonably his entitlement to the exception.) He never indicated a cosmetic reason at the time of the offenses alleged. . . . Thus, although the accused was shown to have a scar on his head, the evidence falls far short of establishing that such scar amounted to a physical disfiguration even in the accused's own mind. There is absolutely no evidence tending to establish that the accused on the dates in question was wearing the wig for "cosmetic reasons" to cover a physical disfiguration. In fact the only direct evidence of a reason for wearing a wig comes from the accused's own statement given to Lt. Col. Hill on 7 October 1974 (Prosecution Exhibit 4), wherein the accused stated, "My only problem as far as the Air Force is concerned is that I wear a wig. The reason for this is I prefer to have my hair a little longer when I am out of uniform." Based on the foregoing, it is crystal clear that no instruction was necessary on the exception to the regulation. *See United States v. Sikorski,* 21 USCMA 345, 45 CMR 119 (1972).

For the reasons indicated, I would affirm the decision of the Court of Military Review.