UNITED STATES, Appellee,

v.

Kenneth YOUNG, Private, U. S. Army, Appellant.

No. 30,103.

U. S. Court of Military Appeals.

July 2, 1976.

*Captain Paul C. Hemmer* argued the cause for Appellant, Accused. With him on the briefs were *Colonel Victor A. DeFiori, Colonel Alton H. Harvey, Lieutenant Colonel James Kucera, Captain John R. Osgood,* and *Captain Sammy S. Knight.*

*Captain Gary F. Thorne* argued the cause for Appellee, United States. With him on the briefs were *Lieutenant Colonel Ronald M. Holdaway, Lieutenant Colonel Donald W. Hansen, Major Steven M. Werner, Major John T. Sherwood, Jr.,* and *Captain Richard A. Gallivan.*

*Colonel Julius C. Ullerich, Jr.,* Appellate Government Counsel, U. S. Air Force, filed a brief *amicus curiae.*

*Mark E. Schrieber, Esquire,* and *David F. Addlestone, Esquire,* filed a brief *amicus curiae* on behalf of the Lawyers Military Defense Committee of the American Civil Liberties Union Foundation.

## OPINION OF THE COURT

COOK, Judge:

A military judge, sitting as a special court-martial at Ford Leonard Wood, Missouri, convicted the accused of a number of offenses in violation of the Uniform Code of Military Justice, including failure to obey an order by his commanding officer "to get his hair cut" to conform with Army regulations, "as explained" by the commander.[1]

■ Subsequent to our grant of review to consider a wide-ranging attack by the accused on the legality of the findings of guilty of the haircut offense, we decided *United States v. Copes,* 23 U.S.C.M.A. 578, 50 C.M.R. 843, 1 M.J. 182 (1975), and *United States v. Anastasio,* 1 M.J. 198 (1975). In those cases, we held that advice to an accused by the trial judge that he can select individual military counsel only from lawyers in the office of the local staff judge advocate is contrary to Article 38(b) of the Code[2] and prejudicial to the accused. The same mistaken advice was given the accused in this case. Disposition of the case on this ground, however, would not obviate the need to decide the merits of the accused's challenge to his conviction of the haircut offense. If a rehearing is held, the validity of prosecution for that offense would still be at issue. Consequently, we turn to the merits of the assignment of error.

Principally, the accused and some of the *amici curiae* contend no compelling Government interest exists that can justify regulation of the length and shape of the hair of military personnel which conflicts with the personal preference of the individual service member. As the accused puts it, there "can be no justification for concluding that long hair represents values contrary to military interests," so there can be no justification for abridgment of a service person's "constitutionally recognized and protected right to determine one's personal appearance." The argument has the support of commentary in professional journals and of a number of cases dealing with hair regulation, but its constitutional underpinning, for a uniform and structured force like the military, has been completely removed by the United States Supreme Court in *Kelley v. Johnson,* 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976). There, the Court overturned a judgment that held unconstitutional a police department regulation of hair styling for male officers. The provisions of the police department regulation considered in *Kelley* are almost identical to

---

1. Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892.

2. 10 U.S.C. § 838(b).

those of the Army[3] that were applied in this case. The reasons given by the court to uphold the police regulation are equally applicable to the service regulations on the subject:[4]

Having recognized in other contexts the wide latitude accorded the Government in the "dispatch of its own internal affairs," *Cafeteria Workers v. McElroy,* 367 U.S. 886, 896, 81 S.Ct. 1743, 1749, 6 L.Ed.2d 1230 (1961), we think Suffolk County's police regulations involved here are entitled to similar weight. Thus the question is not, as the Court of Appeals conceived it to be, whether the State can "establish" a "genuine public need" for the specific regulation. It is whether respondent can demonstrate that there is no rational connection between the regulation, based as it is on respondent's method of organizing its police force, and the promotion of safety of persons and property. *United Public Workers v. Mitchell,* 330 U.S. 75, 100–101, 67 S.Ct. 556, 91 L.Ed. 754 (1947); *Jacobson v. Massachusetts,* 197 U.S. 11, 30–31, 35–37, 25 S.Ct. 358, 49 L.Ed. 643 (1905).

■ We think the answer here is so clear that the District Court was quite right in the first instance to have dismissed respondent's complaint. Neither this Court, the Court of Appeals, or the District Court is in a position to weigh the policy arguments in favor of and against a rule regulating hair styles as a part of regulations governing a uniformed civilian service. The constitutional issue to be decided by these courts is whether petitioner's determination that such regulations should be enacted is so irrational that it may be branded "arbitrary," and therefore a deprivation of respondent's "liberty" interest in freedom to choose his own hair style. *Williamson v. Lee Optical,* 348 U.S. 483, 487–488, 75 S.Ct.

461, 99 L.Ed. 563 (1955). The overwhelming majority of state and local police of the present day are uniformed. This fact itself testifies to the recognition by those who direct those operations, and by the people of the States and localities who directly or indirectly choose such persons, that similarity in appearance of police officers is desirable. This choice may be based on a desire to make police officers readily recognizable to the members of the public, or a desire for the *esprit de corps* which similarity is felt to inculcate within the police force itself. Either one is a sufficiently rational justification for regulations so as to defeat respondent's claim based on the liberty guaranty of the Fourteenth Amendment.

The Court of Appeals relied on *Garrity v. New Jersey,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), and *amici* in their brief in support of respondent elaborate an argument based on the language in *Garrity* that "policemen, like teachers and lawyers, are not relegated to a watered-down version of constitutional rights." *Id.,* at 500, 87 S.Ct., at 620. *Garrity,* of course, involved the protections afforded by the Fifth Amendment to the United States Constitution as made applicable to the States by the Fourteenth Amendment. *Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). Certainly its language cannot be taken to suggest that the claim of a member of a uniformed civilian service based on the "liberty" interest protected by the Fourteenth Amendment must necessarily be treated for constitutional purposes the same as a similar claim for a member of the general public.

■ Secondarily, the accused contends that, because the regulation prescribes different standards of hair grooming for male and female personnel,[5] it represents such invidious discrimination as to amount to a

---

**3.** AR 600–20, paragraph 5–39 (Jun. 22, 1973) (now change 4, Jun. 12, 1974).

**4.** *Kelley v. Johnson,* 425 U.S. 238, 96 S.Ct. 1440, 1446, 47 L.Ed.2d 708 (1976).

**5.** The regulation, AR 670–30, paragraph 1–4*b* (Oct. 24, 1975), regarding women states as follows:

Hair will be neat and will not extend below the bottom edge of the collar nor be cut so short as to present an unfeminine appearance. . . . Hair should be attractively styled so that it is becoming with the uniform and headgear.

denial of the constitutional right to equal protection under the law.

In *Kelley,* the petitioner also asserted that the hair regulation denied him equal protection of the law, but his claim appears to have been addressed only to the difference between the enforced grooming standards in the police department and those obtaining in the general community. The Supreme Court remarked that various differences between members of a uniform police force and other employees of the government, in organizational structure and equipment, mode of dress, and overall need for discipline, justified restrictions on police officers that might not be allowable for other employee groups. Those comments are not controlling here as the difference in treatment in *Kelley* involved members of different cognate classes. Here, say appellate defense counsel, women service persons and male service persons are "similarly circumstanced," and, therefore, must all "be treated alike."

█ A sound argument can lose its appeal when pushed to unappealing extremes. Men and women are different in many ways, and not every governmental action that takes account of these differences is necessarily so irrational or so arbitrary as to violate the constitutional right to equal protection.

Considering a police department regulation on hair style that discriminated between male and female members of the department, Judge Owens of the United States District Court, Middle District of Georgia, concluded there was "no merit" to a contention that as "women may have long hair and they [the male officers] may not, they are denied the equal protection of the law." *Ashley v. City of Macon,* 377 F.Supp. 540, 545 n. 2 (M.D.Ga.1974), *aff'd,* 505 F.2d 868 (5th Cir. 1975). We are of the same opinion.

Moving from constitutional principle to practical experience, the accused calls attention to an article in *Soldiers,* an official Army magazine, which observes that com-manders differ markedly in enforcement of the regulation.[6] The argument, however, does not charge arbitrary and capricious enforcement as regards different members of the command; instead, it questions the nature of the order given the accused.

According to the specification of the offense, the accused was ordered to cut his hair to conform to the haircut regulation, "as explained" by the commander. The commander testified that, after ascertaining the accused understood the regulation, he "explained how" he wanted the accused to have his hair cut. He indicated that the hair on top of accused's head "should be cut to about two inches," which was "the maximum according to Army Regulations." When he saw the accused a few days later, he concluded the accused had not gotten a haircut as he had been instructed.

A material difference exists between the regulation and the commander's order. Under the commander's instruction, the maximum allowable bulk of the hair on the top of the head was 2 inches. The regulation, however, does not control bulk in terms of inches. It provides that bulk cannot be "excessive"; and proper bulk is described as that which would not "interfere with the normal wear of all standard military headgear." Nothing in the regulation or in the record indicates that bulk in excess of 2 inches would interfere with the normal wearing of standard headgear.

Pictorial representations of conforming haircuts are set out in the regulation. In some of these, the bulk of the hair of the model appears to be appreciably more than 2 inches. Both the commander and trial counsel were apparently aware of that circumstance, but deemed it immaterial. Thus, when he explained his understanding of the regulation, the commander referred to the "pictures . . . published" with it. Asked to demonstrate, with his fingers, the allowable bulk on the top of the head, he measured a distance that trial counsel, initially, described as approximately 2 inches. Defense counsel objected on the ground that the demonstrated distance was

---

6. Myers, "Hairy Problem," *Soldiers,* Vol. 30, No. 8, Aug. 1975, at 32–33.

"far greater than two inches." Thereupon, trial counsel directed that the record reflect that the distance was "substantially less than what the witness stated" was the bulk of the accused's hair "that day." The trial judge remained silent throughout this interchange.

█ In our opinion, the haircut ordered by the commander conflicts with the standard for bulk prescribed by the regulation. The regulation directs that hair styles "will be judged *solely* by the criteria" it prescribes. (Emphasis supplied.) The commander's standard of 2 inches is substantially more restrictive than that posited in the regulation. As the commander judged the accused's compliance with the regulation by an impermissible criterion, the record is insufficient to sustain the findings that the accused violated the regulation.[7] Consequently, as to Charge II and its specification, the decision of the Court of Military Review is reversed, and the findings of guilty of that offense are set aside. Charge II and its specification are ordered dismissed.

At the outset of this opinion, we indicated that *United States v. Copes, supra,* requires reversal of all findings of guilty because of the erroneous advice given the accused as to his right to counsel. We, therefore, reverse the decision of the United States Army Court of Military Review as to the remaining findings of guilty and the sentence. The record of trial is returned to the Judge Advocate General of the Army. A rehearing may be ordered.

Judge PERRY concurs.

FLETCHER, Chief Judge (concurring in part and dissenting in part):

This Court initially granted review on the question "whether the evidence is insuffi-cient to convict the appellant of . . . a failure to obey an order to obtain a haircut in accordance with Army Regulations as explained by Lieutenant Colonel Weight since the appellant did obtain a haircut [and] the standards explained were different than those stated by the Army Regulation and were wholly subjective." We later enlarged the granted issue and requested additional briefs and argument on the question "whether military necessity justifies the need for military regulations governing the length and style of a service person's hair or whether such regulations are an invasion of his personal rights."

With regard to the constitutional challenge lodged against the haircut regulation, I concur in the principal opinion's resolution of the question. *See Kelley v. Johnson,* 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976). I also am in agreement with the majority that all of the findings must be set aside and a rehearing authorized because of the erroneous advice given the accused regarding his rights to counsel. *United States v. Anastasio,* 1 M.J. 198 (1975); *United States v. Copes,* 23 U.S.C.M.A. 578, 50 C.M.R. 843, 1 M.J. 182 (1975).

I cannot support the Court's dismissal of the haircut offense on grounds that the evidence of record is legally insufficient. Inasmuch as Colonel Weight sought only to have Private Young get his hair cut in accordance with Army regulations, it is immaterial whether Colonel Weight's interpretation of the regulation was more restrictive than the actual language of the regulation *if* the accused's action nevertheless violated both the order *and* the regulation. The "ultimate offense" charged was a violation of the regulation and, as acknowledged by the appellant, "an order to

---

7. The commander also testified that the accused's hair style failed to comport with regulation standards for side and back taper. The testimony on this point suggests that, as to these aspects of style, the commander's instructions were consistent with the provisions of the regulation, and that, after the alleged haircut, the accused's hair style still did not conform to the regulation. However, as the principal emphasis of the prosecution was on the bulk of the hair, and the trial judge gave no indication he understood that the evidence demonstrated a conflict with the standard of the regulation, there is, in our opinion, reasonable likelihood that the findings of guilty were predicated entirely on this part of the evidence. *Cf. United States v. Burse,* 16 U.S.C.M.A. 62, 65, 36 C.M.R. 218, 221 (1966).

obey the law can have no validity beyond the limit of the ultimate offense committed." See *United States v. Wartsbaugh,* 21 U.S.C.M.A. 535, 540, 45 C.M.R. 309, 314 (1972); *United States v. Bratcher,* 18 U.S.C. M.A. 125, 128, 39 C.M.R. 125, 128 (1969). Appellate defense counsel further concede that the accused's conviction can stand so long as it is shown "that his haircut was not in accord with the haircut regulation, per se, without erroneous interpretation."

Colonel Weight's testimony, if believed, indicates that when he ordered the accused to get a haircut, the hair "standing on the top of [the accused's] head . . . [was] about four inches [high]." When he encountered Private Young 4 days after the date he had set for the accused to get a haircut, Colonel Weight testified:

> The hair on the top of his head was still about four inches high, very excessive in appearance and extreme and the hair on the side and in the back was still not tapered in accordance with instructions which I had given him.

Whether the hairstyles illustrated in figure 5–1 of Army Regulation 600–20 (June 12, 1974) permit the wearing of hair in excess of 2 inches in height on the top of the head may be subject to debate; however, there can be no question that hair "four inches high" on the top of the head does not conform to the regulation. Since this Court has no fact-finding power in a situation such as this, the testimony of Colonel Weight with regard to the height of Private Young's hair must be accepted as credible in assessing the legal sufficiency of the evidence. *United States v. McCrary,* 1 U.S.C.M.A. 1, 1 C.M.R. 1 (1951). Applying that standard, I find no legal basis upon which to conclude that the evidence with regard to the haircut offense is insufficient.