**UNITED STATES**

v.

**Staff Sergeant Amos A. WOMACK, FR 448–64–9151, United States Air Force.**

**ACM 26660.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 14 Jan. 1988.

Decided 27 Oct. 1988.

Appellate Counsel for the Appellant: Colonel Leo L. Sergi and Major Lynne H. Wetzell.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni, Lieutenant Colonel Morris A. Tanner, Jr. and Major Kathryn I. Taylor.

Before HODGSON, HOLTE, FORAY, MICHALSKI, LEWIS, BLOMMERS, KASTL and MURDOCK, Appellate Military Judges, En Banc.

## DECISION

LEWIS, Senior Judge:

The appellant pleaded guilty to willful disobedience of a lawful order and forcible sodomy of an airman. His plea of guilty to the offense of willful disobedience of an order was conditional. The conditional plea preserves for appellate review the issue of the lawfulness of the order, a matter unsuccessfully litigated by the appellant at trial. R.C.M. 910(a)(2). The appellant's sentence is a dishonorable discharge, confinement for five years, forfeiture of all pay and allowances and reduction to airman basic.

A discussion of the circumstances leading to the commission of the offenses is necessary. While the appellant was assigned in Korea he was diagnosed as being infected with the Human Immunodeficiency Virus (HIV). This viral condition is described through expert testimony in the record as the progenitor to the Acquired Immunodeficiency Syndrome (AIDS) disease. Although the appellant had not developed the AIDS symptomatology at the time of trial, there was a reasonable likelihood, based upon available statistical evidence, that he would develop the disease at some future time. It is undisputed that he, as others infected with the virus, is capable of communicating the infection to others, particularly through intimate physical contacts involving the transmission of bodily fluids. Those who become infected through such a transmission are, similarly, likely to develop AIDS.

As is apparent standard procedure, the appellant was placed under close medical supervision at the Wilford Hall Medical Center, the centralized Air Force location for treatment and counselling of those infected with the HIV virus. A major portion of the counselling received by the appellant, as with others having the same condition, related to "safe sex" practices. This counselling is designed to educate each HIV patient as to the precautions to be observed to minimize the chances of passing the virus to others. The appellant was eventually determined to be medically fit for duty and was assigned to Homestead Air Force Base, Florida.

Acting on coordinated command-wide guidance, the appellant's commander at Homestead issued a six part written order to him on 15 October 1987. This order directed that the appellant refrain from the use of illegal drugs, enunciated limitations on his ability to donate blood or other bodily fluids, and required him to notify health care providers of his condition. He was not charged with disobedience of these three portions of the order. The three remaining portions of the order detailed safe sex practices, and served to synthesize the counselling he had received at Wilford Hall. The appellant was ordered to inform

all present and future sexual partners of his condition, to insure that sexual partners were protected from contact with certain of his bodily fluids and excretions, and to refrain from acts of sodomy or homosexuality.

Several weeks later, on 4 December 1987, Airman T. accepted an invitation to sleep in the appellant's room in the dormitory. Airman T.'s roommate had requested the private use of their room while he entertained a visiting girlfriend. Airman T. had been drinking heavily and was, by his testimony, somewhat intoxicated. After accepting the appellant's invitation he fell asleep on the floor near the appellant's bed. Airman T. experienced an erotic dream. He became quite restless and suddenly awoke to find that his penis was in the appellant's mouth. The appellant was performing an act of fellatio on him. Airman T. fled from the room. The matter was reported to appropriate authorities in very short order.

As a result of the incident described above the appellant was charged with forcible sodomy and willful disobedience of his commander's order. The willful disobedience specification reads as follows:

> In that STAFF SERGEANT AMOS A. WOMACK, [jurisdictional information omitted] having received a lawful command from ... his superior commissioned officer, then known by the said Staff Sergeant Amos A. Womack to be his superior commissioned officer, to inform all present and future sexual partners of his Human Immunodeficiency Virus infection, to avoid transmitting the infection to other persons by taking affirmative steps during any sexual activity to protect his sexual partner from coming in contact with his blood, semen, urine, feces, or saliva, and to refrain from any acts of sodomy or homosexuality as prescribed by the Uniform Code of Military Justice, regardless of whether or not his partner consents to such acts, or words to that effect, did, at Homestead Air Force Base, Florida, on or about 4 December 1987, willfully disobey the same.

The order was attacked at trial and is now challenged on appeal as being overly intrusive and, therefore, not "lawful."

■ An order, to be lawful, must relate to a military purpose. An order may not, without such a valid military purpose, interfere with personal rights or private affairs. MCM, Part IV, paragraph 14c(2)(a)(iii) (1984). The appellant, in effect, claims that the safe sex order intruded into the area of his interpersonal relations without a corresponding showing of valid military necessity. In this context the appellant also questions the constitutional validity of the order. *See* MCM, Part IV, paragraph 14c(2)(a)(iv) (1984).

■ While an overreaching by military order into a private area of one's life may raise an issue having a constitutional dimension, we note that the nature of the disobedience in this case does not represent a promising basis for a constitutional challenge. The charged act of disobedience was homosexual sodomy. This is not a constitutionally protected activity. *Bowers v. Hardwick*, 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986). If one considers the constitutional question in terms of the reasonableness of the order rather than the nature of the disobedience, one has to evaluate the vital public health interests sought to be protected. Obviously, we are viewing a problem about which the law is likely to develop rapidly in the months ahead. At this early juncture one state appellate court has suggested, albeit in a narrowly drawn factual situation, that even certain heterosexual marital contacts might constitutionally be limited to avoid transmission of the HIV virus from one partner to another. *Doe v. Coughlin*, 71 N.Y.2d 48, 518 N.E.2d 536, 523 N.Y.S.2d 782 (1987). We shall, for this moment, explore the more basic question of whether the order was a lawful exercise of command authority. The related constitutional issue of whether the order was such as to unreasonably deprive the recipient of certain basic liberties is an inherently interwoven concern. *See United States v. Young*, 1 M.J. 433, 435 (C.M.A. 1976).

■ We recognize that "[t]he regulatory authority of a commander is not unlimited ... Orders and directives which only tangentially further a military objective, are excessively broad in scope, are arbitrary and capricious, or needlessly abridge a personal right are subject to close scrutiny and may be invalid and unenforceable." *United States v. Green*, 22 M.J. 711, 716 (A.C.M.R.1986). *See also United States v. Young, supra.* The military objective sought by the order to the appellant in this case was set forth in the first paragraph of his commander's letter which transmitted that order, as follows: "Because of the necessity to safeguard the overall health of members of a military organization to insure unit readiness and the ability of the unit to accomplish the mission, certain behavior and unsafe health procedures must be proscribed for members who are HIV antibody positive." The validity of an order premised on unit health concerns has been recognized against the claim of an accused that his obedience would be contrary to personal religious convictions. *United States v. Chadwell*, 36 C.M.R. 741 (N.B.R.1965) (refusal to obey an order to obtain inoculation against certain diseases). *See generally United States v. Wheeler*, 12 U.S.C.M.A. 387, 30 C.M.R. 387, 389 (1961). Thus, the order in this case would appear to be valid if it bears a rational relationship to the legitimate health care concerns of the command.

The appellant complains that the component parts of the order (for the purpose of our consideration the three safe sex components) are broader in scope than the described purpose of protecting the health and welfare of those within the military organization. The order is so worded that it does not on its face restrict the appellant in his contacts merely with military sexual partners or those who might reasonably be considered part of the military community. While there is no need for us to reach the issue of sexual contact with civilians, we note that a recognized component of fostering the morale, health and welfare of a military unit is keeping the unit free from disrepute. *United States v. Milldebrandt*, 8 U.S.C.M.A. 635, 25 C.M.R. 139, 142 (1958). Clearly, the military has an interest in attempting to insure that those of its members infected with the HIV virus deal in an honest and reasonable manner with otherwise unwary sexual partners, regardless of their status. It would be unconscionable and potentially disastrous to the general reputation of the military if commanders were to adopt a hands-off attitude as to the possible consequences of the acts of infected members in the larger community beyond the gate.

In this case, of course, we need only address what did occur. The disobedience consisted of an act with a fellow military member, a matter about which the appellant's commander had a direct and abiding concern. In analyzing the validity of the order we will consider the three safe sex components separately.

*Notice to Sexual Partners*

The relevant portion of the written order states: "You will inform all present and future sexual partners of your infection." We need not dwell on this aspect of the order at length. The record is replete with expert testimony concerning the likelihood of transmission of the virus through direct physical contact with an infected individual's bodily fluids. Various forms of sexual activity provide one of the two primary known means of transmission, the other being intravenous use of contaminated needles. The cited portion of the order, standing alone, does not purport to curtail the recipient's sexual activity. It merely establishes a reasonable, common sense requirement for notice to others with whom the recipient intends to become intimately engaged. Absent this threshold requirement, the disease might spread rampantly among an unwitting base population. We conclude, therefore, that the notice portion of the order is valid and does not unduly infringe upon the appellant's liberty.

*Protection of Partner from Contact with Bodily Fluids and Excretions*

The relevant portion of the order states: "You will avoid transmitting the infection to other persons by taking affirmative

steps during any sexual activity to protect your sexual partner from coming into contact with your blood, semen, urine, feces, or saliva." This portion of the order unquestionably covers a good deal more than the activity which was charged as a violation of the order in this case. The trial defense counsel noted this in arguing that the appellant was thereby prohibited from heterosexual sex for the purposes of procreation, if he had been so inclined, or even from kissing another on the mouth. Whether the breadth of the order extends into constitutionally protected areas is not the issue before us. As we have noted, homosexual sodomy is not such a protected activity. *Bowers v. Hardwick, supra.* Based on the expert testimony presented concerning the transmission of the virus, we do not doubt that the protection portion of the order contemplates necessary precautionary measures to limit the spread of the virus incident to intimate bodily contacts. As we have also noted, the order served to synthesize and reinforce the substance of counselling the appellant, and presumably other patients similarly situated, had previously received at Wilford Hall. Obviously, difficult issues involving the balancing of societal versus personal interests remain to be resolved in this area. We will deal with the precise interests involved in this instance.

The parties at trial agreed that the potential transmission agent in this case was saliva. The primary expert witness, Major (Doctor) Robert A. Zajac, Director, Human Immunodeficiency Virus Unit, Wilford Hall Medical Center, testified in the hearing on a motion to dismiss the disobedience specification and later as a government sentencing witness. He acknowledged that there were no known cases in which saliva had been identified as a transmission agent for the HIV virus. This, however, is not surprising. The witness explained that it would be virtually impossible to isolate saliva as the transmission agent from other primary agents, such as semen, which are passed from one sexual partner to the other. The stipulated testimony of another Air Force doctor who has served as an AIDS consultant, Captain Joseph Ruckaby,

III, reflects that the HIV virus is present in the saliva of an infected individual, but in smaller quantities than in blood or semen. Both he and Major Zajac opined that it was possible but not very likely that one could transmit the virus through his saliva incident to an act of fellatio.

Major Zajac testified that the probability of transmitting the virus would be increased in either of two situations. If the passive partner had an abrasion or other break in the skin of his penis while the act of fellatio was being performed, the chances of transmission would be greatly enhanced. There would also be an increase in the probability of transmission of the virus if any blood were present in the infected individual's saliva. Major Zajac explained that those infected with the virus showed a higher than average propensity for developing gum problems, and thus were more likely than those not affected to have traces of blood mixed in with their saliva. Based upon information available at trial, there was no indication that Airman T. had been infected with the virus, or that he was likely to become infected, as a result of his encounter with the appellant.

We are satisfied from the testimony which is summarized above that the commander had a rational basis in fact for an order which extended to saliva as a potential transmission agent. It is conceivable as more is learned about the HIV virus that future orders will be adjusted, either through expansion or contraction, to reflect current knowledge. Based on the learning and knowledge generally available when the order was issued, we conclude that the commander's direction that the appellant take affirmative steps to protect sexual partners from coming into contact with his saliva was a lawful exercise of command authority.

### *Refraining from Acts of Sodomy or Homosexuality*

■ The remaining safe sex portion of the written order states: "You will refrain from any acts of sodomy or homosexuality as proscribed by the Uniform Code of Military Justice, regardless of whether or not

your partner consents to such acts." This portion of the order did no more than direct that the appellant refrain from activity that he was already prohibited from engaging in. He was ultimately charged with the offense of forcible sodomy, an activity specifically contemplated by the order. The disobedience of this portion of the order is fairly embraced within the specification alleging sodomy with Airman T. *United States v. Baker*, 14 M.J. 361 (C.M.A.1983). Accordingly, that part of the disobedience specification referring to this portion of the written order is multiplicious for findings with the offense of sodomy.

We conclude that the appellant's acts of disobedience of the other two safe sex portions of the commander's order are not multiplicious for findings. Of course, we consider it highly unlikely that one would notify a prospective forcible sodomy victim that he is infected with the HIV virus and might transmit it through sexual contact. It is also unlikely that one would commit an act of nonconsensual fellatio against another while having the consideration to provide protection to the victim by fitting him with a condom. Whether these are reasonable scenarios is not the determining factor in assessing multiplicity for findings. Neither disobedience of the notice nor the protection portion of the commander's order is, in and of itself, fairly embraced within the appellant's act of forcible sodomy against Airman T.

Based on our conclusion as to multiplicity we modify the Specification of Charge I by deleting the word, "and to refrain from any acts of sodomy or homosexuality as prescribed by the Uniform Code of Military Justice, regardless of whether or not his partner consents to such acts." We also delete the comma and add the word, "and," between the descriptions of the two remaining portions of the order disobeyed by the appellant. The military judge ruled that disobedience of the order and forcible sodomy were multiplicious for sentencing. Thus, we are not required to reassess the sentence. Based on our review of the entire record, we are convinced that the approved sentence is appropriate.

The findings of guilty, as modified, and the sentence are correct in law and fact and, on the basis of the entire record, are

AFFIRMED.

Chief Judge HODGSON, Senior Judges FORAY and KASTL, Judges HOLTE, MICHALSKI, BLOMMERS and MURDOCK concur.