UNITED STATES, Appellee,

v.

Specialist Gerardo L. NEGRON,
145–62–3802, United States
Army, Appellant.

ACMR 8801150.

U.S. Army Court of Military Review.

28 April 1989.

For Appellant: Lieutenant Colonel Russell S. Estey, JAGC, Major Kathleen A. VanderBoom, JAGC, Captain Jeffrey J. Fleming, JAGC (on brief).

For Appellee: Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Major Daniel J. Dell'Orto, JAGC, Captain Randy V. Cargill, JAGC (on brief).

Before MYERS, BASHAM, and HOSTLER *, Appellate Military Judges.

## OPINION OF THE COURT

HOSTLER, Judge:

Before a military judge sitting alone as a general court-martial, appellant pleaded guilty to two specifications of willful disobedience of a lawful order and two specifications of adultery in violation of Articles 90 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 890 and 934, respective-

* Judge Dorsey D. Hostler took final action in this case prior to his release from active duty.

ly.[1] The order in question required appellant to forewarn prospective sex partners that he had been diagnosed as being infected with the human immunodeficiency virus (HIV) and required him to wear a condom when having intimate sexual relations.[2]

A brief recitation of the facts relevant to our decision is in order. Appellant was married, but living apart from his spouse. In June 1987, he was advised of a confirmed medical diagnosis that he carries the HIV antibody, a viral condition recognized as progenitor to the acquired immunodeficiency syndrome (AIDS) disease. During the same month, he was counseled at length regarding the implications of this diagnosis. The counseling included a discussion of the deadly nature of the AIDS disease and the means through which the virus might be transmitted to others. One such means is intimate sexual contact.

In August 1987, appellant received a verbal and written order from his commanding officer requiring that he inform prospective sex partners of his diagnosed HIV condition before engaging in intimate sexual relations and that he wear a condom when having intimate sexual relations.[3] In October 1987, on two separate occasions approximately one week apart, appellant engaged in sexual intercourse with PVT O. While he did wear a condom on both occasions, he did not inform PVT O of his medical condition or of his marital status.[4] Based on these facts, appellant pleaded guilty to adultery and willful disobedience of a lawful order.

Appellant now, for the first time, challenges the lawfulness and constitutionality of the order and argues that his pleas of guilty are therefore improvident.[5] He further asserts that the Article 90 (disobedience of a lawful order) specifications are multiplicious for findings with each other and with the Article 134 (adultery) specifications; that the military judge erred in failing, *sua sponte*, to recognize and address these multiplicities; and that his sentence is inappropriately severe. With all these contentions, we disagree.

### Lawfulness of the Order

■ It is well established that commanders have the authority to regulate all activities reasonably necessary to safeguard and protect the morale, discipline and usefulness of their commands. *United States v. Martin*, 5 C.M.R. 102 (C.M.A.1952). While broad, such authority is not without limitation. *United States v. Green*, 22 M.J. 711, 716 (A.C.M.R.1986). The Manual for Courts–Martial recites, in this regard, that lawful orders

> must relate to military duty, which includes all activities reasonably necessary to accomplish a military mission, or safeguard or promote the morale, discipline, and usefulness of members of a command and directly connected with the maintenance of good order in the service. The order may not, without such a valid military purpose, interfere with private rights or personal affairs. However, the dictates of a person's conscience, religion, or personal philosophy cannot justify or excuse the disobedience of an otherwise lawful order.... The order must not conflict with the statutory or consti-

---

1. His sentence, approved by the convening authority, included a bad-conduct discharge, forfeiture of $447.00 pay per month for six months, and reduction to the grade of Private E1.

2. The requirement for such an order and the form of the order are set out in Army Reg. 600–110, Personnel–General: Identification, Surveillance, and Administration of Personnel Infected with Human Immunodeficiency Virus (HIV) (11 March 1988).

3. The appellant stipulated at trial that he understood "intimate relationships" to include sexual intercourse, and that even if he wore a condom during such relations, there remained some chance that he could transmit HIV to his sexual partner.

4. The record indicates that appellant decided not to advise PVT O of his medical circumstance out of embarrassment and a fear of rejection.

5. In *United States v. Womack*, 27 M.J. 630 (A.F. C.M.R.1988), the lawfulness of a similar order was litigated and preserved for appeal through entry of a conditional plea under Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 910(a)(2) [hereinafter MCM, 1984 and R.C.M., respectively]. We commend such procedure where appropriate to the consideration of trial defense practitioners.

tutional rights of the person receiving the order.

MCM, 1984, Part IV, para. 14c(2)(a)(iii) and (iv). *See also id.*, para. 16c(1)(c) ("A general order or regulation is lawful unless it is contrary to the constitution, the laws of the United States, or lawful superior orders or for some other reason is beyond the authority of the official issuing it.").

■ Appellant has not challenged the military purpose of his commander's "safe sex" order. That the order is supported by such a purpose is clear from the record and from the guidance set forth in Army Regulation 600–110. *See also United States v. Womack*, 27 M.J. at 633 (unit health and keeping a unit free from disrepute are valid bases for an order requiring members infected with HIV to inform sexual partners of their condition and to practice safe sex). Appellant, however, asserts that the order he disobeyed impermissibly conflicts with a privacy right founded in the Constitution.

The Constitution of the United States does not expressly articulate a right to privacy. The United States Supreme Court, however, has recognized, as emanating from various express constitutional guarantees, certain "penumbral" rights of privacy. *See e.g. Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (contraceptives in marital situations); *Eisenstadt v. Baird*, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972) (contraceptives in nonmarital situations); *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), *Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923) (child rearing and education); *Prince v. Massachusetts*, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944) (family relationships); *Skinner v. Oklahoma, ex rel. Williamson*, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942) (procreation); *Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967) (marriage); *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) (abortion). Among these is a penumbral privacy right protecting some aspects of sexual intimacy in the context of the marital relationship. *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678. The courts,

however, have to date neither recognized nor created a constitutionally protected privacy right in nonmarital or extramarital sexual relations. Indeed, various forms of nonmarital and extramarital sexual conduct fall within well recognized areas of traditional and statutory proscription. *See, e.g. Bowers v. Hardwick*, 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986) (there is no fundamental right to consensual homosexual sodomy); *United States v. Hickson*, 22 M.J. 146, 150 (C.M.A.1986) (adultery and fornication committed by unmarried persons under circumstances which are not strictly private are punishable under military law); *United States v. Johanns*, 20 M.J. 155 (C.M.A.) *cert. denied*, 474 U.S. 850, 106 S.Ct. 147, 88 L.Ed.2d 122 (1985) (restrictions on contacts between officers and enlisted persons, male/female or otherwise, can be imposed where there is direct supervisory relationship); *United States v. Scoby*, 5 M.J. 160 (C.M.A.1978) (consensual nonprivate heterosexual sodomy is a properly chargeable offense in the military); *United States v. Womack*, 27 M.J. at 632–34 (homosexual sodomy is not a protected activity). The Supreme Court stated in *Bowers v. Hardwick*, 106 S.Ct. at 2844, that any claim that the Supreme Court's right of privacy cases "stand for the proposition that any kind of sexual conduct between consenting adults is constitutionally insulated from state proscription is unsupportable." Appellant's acts of adultery with PVT O fall within such an area of proscription. Accordingly, his contention that he enjoys a constitutionally protected privacy "right to freely, and without limitation, engage in consensual, private, intimate heterosexual relations" is without merit.

In *United States v. Womack*, 27 M.J. 630, the Air Force Court of Military Review, *en banc*, upheld the conviction of an HIV infected staff sergeant who disobeyed an order similar in substance to the one involved in the present case. The order given to Sergeant Womack required him to "inform all present and future sexual partners" of his infection, and to "avoid transmitting the infection to other persons by taking affirmative steps during any sexual

activity" to protect his sexual partner(s) from contact with his "blood, semen, urine, feces, or saliva." *Id.* at 633–634. Sergeant Womack violated his order by engaging in an unforewarned and unprotected act of nonconsensual sodomy. Specialist Negron violated his order by not warning PVT O of his condition before engaging in consensual sexual intercourse.[6] In violating those orders, Sergeant Womack and Specialist Negron exposed their unwitting sexual partners to the possibility of infection with HIV and the consequences which potentially attend such infection.

To the extent that Sergeant Womack or Specialist Negron may have had some expectation of privacy in their sexual activities, that expectation must be subordinated to the constitutionally recognized and compelling principle that

> in every well-ordered society charged with the duty of conserving the safety of its members the rights of the individual in respect of his liberty may at times, under the pressures of great dangers, be subjected to such restraint, to be enforced by reasonable regulations, as the safety of the general public may demand.

*Jacobson v. Massachusetts,* 197 U.S. 11, 29, 25 S.Ct. 358, 362, 49 L.Ed. 643, 651 (1905).[7] This same compelling principle caused the Court of Military Appeals to uphold as reasonable and lawful a Navy regulation requiring a medical certificate showing the absence of certain communicable diseases as a prerequisite to approval for a servicemember to marry a foreign national, *United States v. Wheeler,* 30 C.M.R. 387 (C.M.A.1961), and the Navy Board of Review to uphold an order to obtain inoculation against certain diseases in the face of a claim of conflicting religious convictions, *United States v. Chadwell,* 36 C.M.R. 741 (N.B.R.1965). In *United States v. Womack,* 27 M.J. 630, the Air Force Court of Military Review applied this same reasoning to uphold a "safe sex" order. Thus, based on an overwhelming need to protect servicemembers as well as the general public, we find that the order which Specialist Negron disobeyed was both reasonable and lawful. The requirement that the appellant forewarn prospective sexual partners of his infection with HIV "merely establishes a reasonable, common sense requirement for notice to others with whom the recipient [of the order] intends to become intimately engaged. Absent this threshold requirement, the disease might spread rampantly among an unwitting base population." *United States v. Womack,* 27 M.J. at 633. The "safe sex" order given to appellant was a minimally restrictive and eminently reasonable measure in furtherance of a compel-

**6.** We note that since PVT O was not made aware of Specialist Negron's HIV infection prior to engaging in sexual intercourse with him, her consent was uninformed. *See United States v. Woods,* 27 M.J. 749 (N.M.C.M.R.1988) for an interesting analysis of the import of consent in AIDS-related allegations of criminal conduct. Other criminal, as well as civil consequences may attend unwarned sexual encounters where the AIDS virus may be transmitted. *See United States v. Johnson,* 27 M.J. 798 (A.F.C.M.R.1988) and cases cited therein. *See also Rock Hudson's Male Lover Is Awarded $14.5 Million,* The Washington Post, Feb. 16, 1989, at 1, for a discussion of the civil suit brought by an unwarned male sex partner against the estate of the late actor Rock Hudson, who died of AIDS complications.

**7.** In *Jacobson,* the Supreme Court upheld a state law requiring persons to obtain smallpox vaccinations against a claim that the Massachusetts compulsory vaccination law was "unreasonable, arbitrary and oppressive." In addressing this matter, the Court stated that

> the liberty secured by the Constitution of the United States to every person within its jurisdiction does not import an absolute right in each person to be, at all times and in all circumstances, wholly freed from restraint. There are manifold restraints to which every person is necessarily subject for the common good. On any other basis organized society could not exist with safety to its members.... "The possession and enjoyment of all rights are subject to such reasonable conditions as may be deemed by the governing authority of the country essential to the safety, health, peace, good order and morals of the community. Even liberty itself, the greatest of all rights, is not unrestricted license to act according to one's own will. It is only freedom from restraint under conditions essential to the equal enjoyment of the same right by others. It is then liberty regulated by law." *Jacobson v. Massachusetts,* 197 U.S. at 26, 25 S.Ct. at 361 (quoting *Crowley v. Christensen,* 137 U.S. 86, 89, 11 S.Ct. 13, 15, 34 L.Ed. 620 (1890).

ling public health interest.[8] The order is lawful and its violation constituted a criminal offense.

## Multiplicity

■ Appellant also asserts on appeal that the two specifications of willful disobedience of a lawful order are multiplicious for findings with each other and with the specifications of adultery. Appellant's failure to raise these assertions at trial has served to waive them. *United States v. Jones,* 23 M.J. 301 (C.M.A.1987); R.C.M. 907(b)(3)(B) (upon a timely motion, a specification may be dismissed if it is multiplicious with another specification).

■ Even if this were not so, appellant's assertions of multiplicity are incorrect. The two separate order violations resulted in two separate unwarned opportunities for transmission of the HIV infection to another soldier—each with a separate probability of occurrence. Specialist Negron is and should be separately accountable for each. This is especially so in this case where a week elapsed between the two unwarned intimacies during which appellant had ample opportunity to reconsider and abandon, rather than repeat, his criminal course of conduct. *See United States v. Abend-*

*schein,* 19 M.J. 619 (A.C.M.R.1984), *pet. denied,* 21 M.J. 84 (C.M.A.1985). Furthermore, the order violations are not multiplicious with the appellant's acts of adultery. Specialist Negron's two separate instances of disobedience to his commander's lawful order simply are not fairly embraced within his acts of adultery. *See United States v. Womack,* 27 M.J. at 630 (the disobedience of the notice and the protection portions of the commander's order are not fairly embraced within the act of forcible sodomy).

## Sentence Appropriateness

■ We have considered and reject the appellant's argument that the portion of his sentence imposing a bad-conduct discharge is inappropriately harsh.

The findings of guilty and the sentence are affirmed.

Senior Judge MYERS and Judge BASHAM concur.

---

8. Merritt, "Communicable Disease and Constitutional Law: Controlling AIDS," 61 New York University L.Rev. 739 (November 1986), discusses various restrictive measures taken in the interest of protecting the public from communicable disease, many of which have withstood constitutionally based challenges. *See also Cuba's Push to Isolate Aids,* Washington Post, Health Supplement, Feb. 14, 1989, for a discussion of restrictive measures being employed in Cuba.